No. 43,232

Tom Miller Yeates, *Appellant,* v. Edwin M. Harms and St. Francis Hospital & School of Nursing, Inc., a Corporation, *Appellees.*

(401 P. 2d 659)

Opinion on rehearing filed May 4, 1965.

(For original opinion, see *Yeates v. Harms,* 193 Kan. 320, 393 P. 2d 982.)

*Gerald L. Michaud,* of Wichita, argued the cause, and *Russell Cranmer, Orval Fisher, Thomas A. Wood,* and *M. William Syrios,* all of Wichita, were with him on the briefs for the appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson,* and *David W. Buxton,* all of Wichita, were with him on the briefs for the appellee, Edwin M. Harms. *Hugo T. Wedell,* of counsel.

*J. Francis Hesse,* of Wichita, argued the cause, and *Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Charles M. Cline,* and *Richard A. Loyd,* all of Wichita, were with him on the briefs for the appellee, St. Francis Hospital & School of Nursing, Inc.

The opinion of the court was delivered by

Robb, J.: The original opinion in this case (*Yeates v. Harms,* 193 Kan. 320, 393 P. 2d 982) affirmed the judgment and orders of the trial court sustaining the defendant hospital's demurrer to plaintiff's evidence, overruling plaintiff's motion to set aside its ruling on the above demurrer, granting judgment to defendants, and overruling plaintiff's motion for new trial.

In his motion plaintiff complains that this court in its original opinion did not meet the issue contained in specifications of error No. 3 and No. 4 reading as follows:

"3. The Court erred in permitting the defendant to cross examine Doctor Jack Weaver regarding the practice of specific ophthalmologists in cities other than Wichita without making any showing that such communities were similar to the Wichita community or that the practice of such specific individual ophthalmologists conformed to the standard, approved practice in the community in which they practiced.

"4. The Court erred in permitting the defendant to testify regarding the practice and procedure of cataract operations by specific individuals in communities other than the Wichita, Kansas, community without any showing

that such communities were similar to the Wichita community or that such practices were the standard, approved practices in such communities."

Plaintiff did not press the foregoing in his oral argument on re-hearing before this court, but he did stress other points involving this court's consideration of the competency of certain evidence admitted by the trial court pertaining to the hospital, particularly a hypothetical question asked of Doctor Jack Weaver and his answers thereto, which we hereafter quote in pertinent parts along with objections of counsel:

"Q. I want you to assume with me these facts, doctor: That on June 13, a physician in this community performed cataract surgery on an eye of a patient in St. Francis Hospital; that approximately 24 hours later, at least the early morning between 8 and 9 o'clock of June 14th, this physician came into the hospital and examined the patient's eye and informed the patient that he would be out of town the next morning and therefore would not see him until the following afternoon of the 15th. That a few hours, around 11 or 12 o'clock after the doctor was in on June 14th, the patient got a severe pain in the eye which had the cataract removed from it on the 13th; that he called the nurse in from the hospital, the patient did, and requested that they get in touch with the doctor that had performed the surgery, and that the nurse then informed him they could not get in touch with the doctor and and he requested that some other doctor be called in, or an interne be called up to see him and she informed him, the nurse, he was informed by the nurse in the hospital, that they could not call in another doctor without the consent and instructions and permission of the doctor who had performed the surgery, and that this man lay in the hospital from—let's see—noon on June 14th until sometime between 1 and 2 o'clock of June 15th in the after-noon and he had had severe pain in the eye that had been operated on. That when the doctor that performed the surgery came in to see him on that day at sometime between 1 and 2 o'clock, he took the bandage off of the eye and saw pus in the eye and stated that there was infection in the eye and that it could only have happened in surgery. Assuming those facts to be true, do you have an opinion as to whether or not the physician's failure to have a stand-in or call-in doctor to be contacted under these circumstances, departed from the standard approved medical practice in the treatment of cataract surgery patients in this and similar communities?

. . . . . . . . . . . . . . .

"Q. Now assuming the same hypothesis, do you have an opinion as to whether or not, the hospital, or the nurse at the hospital's refusal to call in a doctor or interne departed from the standard approved medical procedure used by hospitals in this community under these circumstances?

"MR. BLAES: To which we object; no showing that the doctor is in a position to answer that question.

"THE COURT: I am going to permit him to answer 'yes' or 'no'. Do you have an opinion?

"A. Yes.

. . . . . . . . . . . . . .

"Q. Well then doctor, assuming this same hypothesis, and that no interne was called, or house doctor from the hospital, would that in any way depart from the standard which I have just asked you about?"

Counsel further objected and a colloquy occurred at this time between counsel and the trial court, and the court, in admitting the testimony, limited Doctor Weaver's answer to the last above-quoted question to *his opinion.* The doctor's answer was, "In my opinion, this would."

At page 325 of our original opinion the testimony of William Farmer, practicing attorney in Wichita, was referred to as cumulative. However, a more searching examination of his testimony shows that during a conversation he had with Doctor Harms concerning the period in which infection in an eye would be discovered, Doctor Harms stated it was forty-eight hours because the period of incubation of bacteria is from forty-eight hours to five days; Harms had discovered the infection approximately forty-eight hours after the operation; Harms had stated the infection possibly may have been caused by any one of the three instruments which enter the eye in a normal cataract operation. As we stated in the original opinion, where a more detailed statement of the facts appears, all of the instruments used in this operation were the property of Harms. He had taken his instruments to the hospital the night before the operation in order for them to be sterilized. It was the duty of the hospital staff to place some of them in a solution and to sterilize the others in an autoclave.

Mr. Farmer further testified with respect to a conversation he had with a student nurse at the hospital who had been in charge of the instruments at the time of plaintiff's second operation. She stated she knew she was the one who handled the instruments on this occasion because, although she did not recall this particular operation, she did remember the patch plaintiff had over his left eye. She restated the general procedure followed by the hospital in sterilizing instruments.

As a result of a more meticulous examination of the above portions of the record, we conclude there is some substantial competent evidence showing negligence on the part of the hospital under our general rules regarding evidence when attacked by demurrer, which need not be reiterated here, whereby a question for the jury is presented. There being some substantial competent evidence from which a jury could find the hospital guilty of negligence which was a proximate cause of the plaintiff's injuries, it follows the trial court

erred in sustaining the hospital's demurrer to the plaintiff's evidence. Where the facts, as here, are in dispute the existence of negligence on the part of the hospital, and whether such negligence, if any, was a proximate cause of the injury sustained by the plaintiff, are questions for the jury.

The foregoing rule on proximate cause has been variously stated in many of our cases (see 4 Hatcher's Kansas Digest, rev. ed., Negligence, § 74, p. 293, and 1964 Cumulative Supplement, Negligence § 74, p. 76; 7A West's Kansas Digest, Negligence, § 136 [25]; pp. 249-251, and 1965 Cumulative Pocket Part, Negligence, § 136 [25], pp. 36, 37) and see, also, *Strohmyer v. Ventura,* 178 Kan. 597, 290 P. 2d 1001.

We are convinced the result reached in our original opinion cannot stand and in furtherance of justice, plaintiff is entitled to a new trial as to the defendant hospital.

Judgment affirmed as to the defendant doctor and reversed with directions to grant a new trial as to the defendant hospital.

PARKER, C. J., and PRICE, J., dissent in part, being of the opinion that the demurrer of the defendant hospital to plaintiff's evidence was properly sustained.